## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| Larry Anthony Mercado, | ) | Case No. 2:25-cv-12724-RMG-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER and** |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Vannadium, Inc.; Richard Gilchrist; and | ) | |
| Rosemarie Savino, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Larry Anthony Mercado ("Plaintiff"), appearing *pro se*, originally filed this action in the Berkeley County Court of Common Pleas, South Carolina, alleging "retaliation" under the Fair Labor Standards Act ("FLSA"), among other claims. (Dkt. No. 1-1.) On September 29, 2025, Defendants removed the action to federal court, asserting this court has federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332(a). (Dkt. No. 1.) On October 2, 2025, Plaintiff filed an Amended Complaint in which he removed his FLSA claim. (Dkt. No. 9.) Before the Court is Plaintiff's Motion to Remand (Dkt. No. 7), Defendants' Motion to Dismiss (Dkt. No. 13), Defendants' Motion to Seal (Dkt. No. 15), and Defendants' Motions to Strike (Dkt. No. 23; 28). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC. Under this authority, the undersigned is authorized: (1) to review the Motion to Remand and Motion to Dismiss and submit a recommendation to the District Judge because these motions are dispositive; (2) to review Defendants' Motion to Seal and Motions to Strike and to issue a final ruling on these motions.[1]

---

[1] The Motion to Strike is a "non-dispositive motion[ ] that may be ruled on by order from this magistrate judge." *Schmalfeldt v. Grady*, No. 4:17-cv-01310-RBH-KDW, 2017 WL 6628187, at *1 (D.S.C. Dec. 7, 2017); *see Est. of*

For the reasons set forth below, the undersigned recommends that Plaintiff's Motion to Remand (Dkt. No. 5) be denied and Defendants' Motion to Dismiss be granted. Defendants' Motions to Strike are denied for the reasons set forth in footnote 2, and Defendants' Motion to Seal is granted.[2]

## **BACKGROUND**

In the Amended Complaint, Plaintiff alleges that he "was engaged by Defendants to perform substantial business development and investor relations work." (Dkt. No. 9 at 2.) Plaintiff, a resident of Berkeley County, South Carolina, alleges he "worked primarily from his home office in South Carolina, performing sales investment and strategic functions under the direction of Defendants." (*Id*. at 1–2.) Defendant Vannadium[3] is a Delaware corporation with its principal place of business in Virginia, and Defendants Richard Gilchrest ("Gilchrest") and Rosemarie Savino ("Savino") are both residents of Virginia. (*Id*. at 1.) According to Plaintiff, "[d]espite repeated promises of compensation, Defendants failed to pay Plaintiff back pay totaling approximately $55,000 and reimbursement for expenses of $5,401.14." (*Id*. at 2.) "Defendants

---

*Beland by & through Hayes v. Charleston Cnty. Sherriff's Off*., No. 1:20-cv-3006-SAL, 2022 WL 304787, at *2 (D.S.C. Feb. 2, 2022) (referring to motions to strike as "non-dispositive pre-trial matters").

[2] In their Motions to Strike, Defendants argue that Plaintiff's sur-reply and supplemental briefings (Dkt. Nos. 21; 25; 26) are improper under Federal Rules of Civil Procedure and this Court's Local Rules. (Dkt. Nos. 23; 28.) The undersigned notes that the Local Rules make no provision for sur-reply memoranda, and Plaintiff did not seek leave of the court to submit the filings at issue. *See Stanfield v. Charleston Cnty. Ct*., No. 2:15-cv-0756-PMD-MGB, 2015 WL 4929186, at *4 n.2 (D.S.C. Aug. 18, 2015) (explaining that "neither the Federal Rules of Civil Procedure nor the Local Civil Rules permit the filing of a sur-reply without leave of the Court") However, in light of Plaintiff's *pro se* status and the discretion afforded to this court, the undersigned allows Plaintiff's filings (Dkt. Nos. 21; 25; 26) and denies Defendants' Motions to Strike (Dkt. Nos. 23; 28). *See, e.g*., *King v. McPherson*, No. 0:15-cv-2358-RBH, 2017 WL 490111, at *1 (D.S.C. Feb. 6, 2017) ("Plaintiff[,] a pro-se prisoner, did not seek leave of court to file a sur-reply. However, this Court in its discretion reviewed Plaintiff's sur reply."); *Williams v. Bartee*, No. CCB-10-935, 2011 WL 2842367, at *2 (D. Md. July 14, 2011) (permitting pro se party to file sur-reply that does not address new material but also does not "unduly prejudice defendants"), *aff'd sub nom. Williams v. Merritt*, 469 F. App'x 270 (4th Cir. 2012); *Walsh v. Lugoff-Elgin Water Dist. of Kershaw Cty*., No. 3:08-cv-3122-CMC, 2009 WL 1044631, at *1 n.1 (D.S.C. Apr. 20, 2009) ("While the court agrees that the sur reply should not have been filed without seeking leave of court, the court has considered the sur reply in resolving Defendants' motion for summary judgment. Defendants' motion to strike the sur reply is, therefore, denied.").

[3] Per its website, Vannadium "is a next-generation data infrastructure system that gives organizations full command of their information." Vannadium, https://www.vannadium.com/ (last visited Dec. 2, 2025).

further cut off Plaintiff's access to business systems (HubSpot, Asana, email) and sought to interfere with his professional reputation by demanding removal of materials from Linkedin." (*Id*.) Plaintiff alleges he was "terminated after asserting his legal right to receive wages and reimbursement for expenses." (*Id*.)

The Complaint alleges four causes of action. Under "Count I—Breach of Implied Contract," Plaintiff alleges that Defendant breached "an implied contract for services . . . by failing to pay wages and reimburse expenses." (*Id*.) Under "Count II—Unjust Enrichment," Plaintiff alleges that he "conferred substantial benefits on Defendants through his services," and that "Defendants retained those benefits without compensating Plaintiff." (*Id*.) Under "Count III—Wrongful Termination in Violation of Public Policy," Plaintiff alleges he was terminated in violation of "the clear public policy of South Carolina" for "asserting his statutory and common-law right to payment of wages." (*Id.*) Under "Count IV—Tortious Interference with Prospective Economic Advantage," Plaintiff alleges that "Defendants intentionally interfered with Plaintiff's business relationships and opportunities, including by undermining his professional reputation." (*Id*.) The Complaint seeks an award of "[b]ack pay of $55,0000" and "[e]xpense reimbursement of $5,401.14." (*Id*. at 3.) It further seeks an award of "[e]quitable relief, including warrants or equity previously promised" and "[p]unitive damages where applicable." (*Id*.)

Plaintiff filed this action in state court on August 21, 2025, and it was removed to federal court on September 29, 2025. (Dkt. No. 1.) On October 2, 2025, Plaintiff filed a Motion to Remand. (Dkt. No. 7.) On October 16, 2025, Defendants filed a Motion to Dismiss (Dkt. No. 13) and a Motion to Seal (Dkt. No. 15). That same day, they also filed a response in opposition to Plaintiff's Motion to Remand. (Dkt. No. 14.) On October 17, 2025, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure

and the possible consequences if he failed to adequately respond to the Motion to Dismiss. (Dkt. No. 16.) Plaintiff filed a response in opposition to the Motion to Seal and a reply brief in support of the Motion to Remand on October 17, 2025. (Dkt. No. 18.) On October 24, 2025, Defendants filed a reply in support of their Motion to Dismiss and Motion to Seal. (Dkt. No. 20.) On October 30, 2025, Plaintiff filed a sur-reply regarding Defendants' Motion to Seal (Dkt. No. 21), and Defendants filed a Motion to Strike that sur-reply on November 4, 2025 (Dkt. No. 23). On October 30, 2025, Plaintiff filed a response in opposition of the Motion to Dismiss (Dkt. No. 22), and Defendants filed a reply brief on November 6, 2025 (Dkt. No. 24). Plaintiff then filed supplemental briefing in opposition to Defendants' Motion to Dismiss on November 17, 2025 (Dkt. Nos. 25; 26), and Defendants filed a Motion to Strike that supplemental briefing on November 19, 2025 (Dkt. No. 28). Plaintiff filed a response in opposition to the Motions to Strike on December 3, 2025. (Dkt. No. 30.) The parties' motions are ready for review.

## DISCUSSION

### A.    Motion to Remand (Dkt. No. 7)

In his Motion, Plaintiff argues that the instant action should be remanded to the Berkeley County Court of Common Pleas because this Court lacks subject-matter jurisdiction over Plaintiff's claims. (Dkt. Nos. 7; 7-1.) The undersigned first considers the applicable standards before analyzing the merits of this argument.[4]

### 1.    Standards

"The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921)). The right to remove a case from state to federal

---

[4] Because Plaintiff is representing himself, these standards must be applied while liberally construing his filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

4

court derives solely from 28 U.S.C. § 1441, which states, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A party seeking removal must establish that the district court can exercise original jurisdiction over the plaintiff's claims, which in most cases requires allegations supporting either federal question or diversity jurisdiction under 28 U.S.C. Sections 1331 and 1332, respectively. *See Mulcahey*, 29 F.3d at 151 (citing § 1441).

On a motion to remand, courts are obligated to "construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (quoting *Mulcahey*, 29 F.3d at 151). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey*, 29 F.3d at 151 (citing *In re Business Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993); *Cheshire v. Coca-Cola Bottling Affiliated, Inc.*, 758 F. Supp. 1098, 1102 (D.S.C. 1990)).

### 2.      Analysis

As noted *supra*, Defendants removed this case based on federal question jurisdiction and diversity jurisdiction. (Dkt. No. 1.) Because Plaintiff subsequently amended the complaint to remove the FLSA claim, this case no longer falls within the federal question jurisdiction as set forth in 28 U.S.C. § 1331. Accordingly, removal is proper only if this Court has diversity jurisdiction. A federal district court has diversity jurisdiction when: (1) the amount in controversy exceeds $75,000; and, (2) "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

Here, Plaintiff argues remand is necessary because "Defendants cannot establish that the amount in controversy exceeds $75,000."[5] (Dkt. No. 7-1 at 2.) As noted *supra*, the Amended Complaint seeks compensatory damages totaling $60,401.14 as well as punitive damages and equitable relief. (Dkt. No. 9 at 3.) In response to Plaintiff's Motion to Remand, Defendants have submitted an August 10, 2025 email from Plaintiff to a Vannadium executive, in which Plaintiff offers a "Settlement Proposal."[6] (Dkt. No. 14-1; *see also* Dkt. No. 26-5.) In this email, Plaintiff states he is "owed outstanding back pay and reimbursable expenses, and [he has] claims related to warrants and other compensation for [his] work while at Vannadium." (*Id.*) After listing the same monetary sums identified in the Amended Complaint, Plaintiff states in this email that he seeks "equity equivalent to a $25,000 investment at the pre-seed round's $15M valuation." (*Id.*).

In his briefings, Plaintiff does not squarely address whether the $25,000 referenced in this email constitutes the "equitable relief" sought in the Amended Complaint. (*See* Dkt. No. 9; 18; 21.) Rather, Plaintiff cites the "Termination Letter" attached to his Amended Complaint to argue that the amount in controversy does not exceed $75,000.00. (Dkt. Nos. 7 at 2; 9-2.) This Termination Letter is signed by Defendant Savino, the Chief Operating Officer of Vannadium, and it was sent to Plaintiff on March 26, 2025. In this letter, Savino states she is "formally separating [Plaintiff] from any titled role or responsibilities within Vannadium."[7] (Dkt. No. 9-2 at 1.) The Termination Letter lists the "compensation owed" to Plaintiff, which appears to total less than $25,000.00. (*Id.*)

---

[5] Complete diversity of the parties exists because Plaintiff is a citizen of South Carolina, the individual Defendants are citizens of Virginia, and Vannadium is incorporated under the laws of Delaware with its principal place of business in Virginia. (Dkt. No. 9 at 1.)

[6] This email is among the documents at issue in Defendants' Motion to Seal (Dkt. No. 15), which is addressed *infra* section C.

[7] This termination letter is among the documents at issue in Defendants' Motion to Seal (Dkt. No. 15), which is addressed *infra* section C.

Upon review, given that the Amended Complaint expressly seeks equitable relief and that the evidence indicates Plaintiff has assigned a monetary amount of at least $25,000 to that relief, the undersigned finds Defendants have established that Plaintiff's claims satisfy the jurisdictional threshold. In other words, when the $25,000 in equitable relief is added to the $60,401.14 in damages expressly sought in the Amended Complaint, the jurisdictional threshold is satisfied. Moreover, Plaintiff's request for punitive damages further weighs in favor of jurisdiction. *See*, *e.g.*, *Hermanson v. Bi-Lo, LLC*, 3:20-cv-03956, 2021 WL 4147113 (D.S.C. August 31, 2021) (denying motion to remand based on pre-suit demand letter seeking $50,000 for settlement, medical expenses exceeding $10,908, medical expenses for physical therapy, significant pain and suffering, loss of enjoyment of life, inconvenience, and mental and emotional distress, and actual and consequential damages, punitive damages, and costs); *Patrick v. City of Aiken*, No. 1:16-cv-03496-JMC, 2019 WL 4736453, at *7 n.6 (D.S.C. Sept. 27, 2019) ("The court is satisfied that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, because Plaintiff is suing to recover compensatory damages, punitive damages, and attorney's fees."); *Meadows v. Nationwide Mut. Ins. Co*., 1:14-cv-04531, 2015 WL 3490062 (D.S.C. June 3, 2015) (denying motion to remand where plaintiff alleged seven causes of action and requested actual and compensatory damages, treble damages, punitive damages, and attorney's fees and costs).

Based on the foregoing, the undersigned finds that this Court has jurisdiction under 28 U.S.C. § 1332(a). Because diversity jurisdiction supports removal under 28 U.S.C. § 1441, this action should remain in federal court and Plaintiff's Motion to Remand (Dkt. No. 7) should be denied.

**B    Motion to Dismiss (Dkt. No. 13)**

In their Motion to Dismiss, Defendants argue both that: (1) the claims against them should be dismissed because this Court does not have personal jurisdiction over them (Dkt. No. 13-1 at 8–22); and (2) Plaintiff has failed to state a claim against any Defendants (*id*. at 22–29). Specific to their first argument for dismissal, Defendants assert that "Plaintiff's location was incidental to his work and was the direct result of his status as an independent contractor." (*Id*. at 8.) The undersigned first considers the applicable standards before analyzing Defendants' first argument for dismissal.[8]

### 1.    Standards

A defendant may bring a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Courts must make a separate personal jurisdiction determination as to each defendant who raises the issue. *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). Once a defendant makes such a motion, the plaintiff bears the burden of establishing personal jurisdiction. *Grayson v. Anderson*, 816 F.3d 262, 267–68 (4th Cir. 2016). When the Court evaluates personal jurisdiction based solely upon the motion papers, affidavits, memoranda, and complaint, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion to dismiss. *Id.* at 268. The Court, in such an analysis, must take the relevant allegations and evidence in the light most favorable to the plaintiff. *Id*. at 268.

Personal jurisdiction over an out-of-state defendant may be either general or specific. "[A] court may exercise personal jurisdiction under the theory of general jurisdiction, which requires a more demanding showing of 'continuous and systematic' activities in the forum state" than what is required to establish specific jurisdiction. *Tire Engineering and Distribution, LLC v. Shandong*

---

[8] Because Plaintiff is representing himself, these standards must be applied while liberally construing his filings in this case. *See Erickson*, 551 U.S. at 94.

*Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home," such as its principal place of business or state of incorporation. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

On the other hand, as to specific jurisdiction, the Court must perform a two-step analysis. The Court must first determine whether the forum state—here, South Carolina—long-arm statute provides a basis for asserting jurisdiction over the defendant. *Young v. FDIC*, 103 F.3d 1180, 1191 (4th Cir. 1997). Then, the Court must determine that the exercise of personal jurisdiction fails to violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Id.*

South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted).

To evaluate the due process requirements for asserting personal jurisdiction, the Fourth Circuit has established a three-part test in which courts consider the following: (1) the extent to which the defendant purposefully availed himself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities directed at the forum state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.

*Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal citation

omitted).

> Courts have considered several nonexclusive factors when considering the first
> prong, purposeful availment: (1) whether defendant maintains offices or agents in
> the forum state; (2) whether defendant owns property in the forum state; (3) whether
> defendant reached into the forum state to solicit or initiate business; (4) whether
> defendant deliberately engaged in significant or long-term business activities in the
> forum state; (5) whether the parties contractually agreed that the law of the forum
> state would govern disputes; (6) whether defendant made in-person contact with
> the resident in the forum state regarding the business relationship; (7) the nature,
> quality, and extent of the parties' communications about the business being
> transacted; and (8) whether the performance of contractual duties was to occur
> within the forum.

*Matias v. Kenda Rubber Indus. Co.*, No. 2:24-cv-7578-RMG, 2025 WL 1400414, at *3 (D.S.C.

May 14, 2025) (quoting *Universal Leather*, 773 F.3d 553, 559 (4th Cir. 2014)).

## 2.    Arguments and Evidence

In their Motion to Dismiss, Defendants assert that the submitted declarations establish that

they did not purposefully avail themselves of the privileges of conducting activities in the state of

South Carolina.[9] (Dkt. Nos. 13-1 at 10–11; 13-2; 13-3.) In their declarations, Defendants Gilchrest

and Savino both state that Vannadium's headquarters are located in Arlington Virginia; it does not

have officers in any other locations; and it has no immediate plans to expand its footprint beyond

its headquarters in Virgnia. (Dkt. Nos. 13-2 at 1; 13-3 at 1.) Gilchrest is the Chief Executive Officer

of Vannadium, as well as the chair of its Board of Directors. (Dkt. No. 13-2 at 1.) Gilchrest and

Savino both work in Virginia, either at their respective homes or at Vannadium's headquarters.

(Dkt. Nos. 13-2 at 1; 13-3 at 1.) Neither individual Defendant has business connections to South

Carolina. Gilchrest last visited South Carolina in 1977, and Savino visited her sister-in-law in

---

[9] While these declarations are not notarized, they have been signed and include statements swearing their truth under
penalty of perjury. *See* 28 U.S.C. § 1746 (allowing unsworn declarations to have full force and effect if the writer
subscribes the statement as true under penalty of perjury).

South Carolina in January 2025. (Dkt. Nos. 13-2 at 1; 13-3 at 1–2.) Both Gilchrest and Savino

maintain that other than remote work,

> Vannadium has no presence outside of its headquarters in Virginia, and it has no
> business connections to South Carolina. Vannadium owns no property of any kind
> in the state, maintains no offices in the state, has no agents or employees working
> for it in the state, and has no plans to expand operations in the state.

(Dkt. No. 13-2 at 2; 13-3 at 2.)

> In his declaration, Gilchrest explains how Plaintiff first became involved with Vannadium:

> I first met Plaintiff, Mr. Mercado, after he was introduced to me by my co-founder
> Walt Rampata. I understand that Mr. Mercado met with Mr. Rampata at a
> conference in Maryland, having previously interacted with him at another
> conference in Las Vegas, Nevada. Mr. Mercado had indicated that he was interested
> in potentially investing in the company and that others may be interested as well.

(Dkt. No. 13-2 at 2.) Savino maintains that "Plaintiff was hired by Vannadium as an independent

contractor . . . to assist with business outreach, both to investors and to prospective customers."

(*Id*.) According to Gilchrest,

> Between October [2023] and January of 2024, people from Vannadium had invited
> Mr. Mercado to various events in the Virginia area. All discussions were held
> outside of South Carolina. As noted above, I have not been to the state in over 40
> years, and no one from Vannadium has ever met with Mr. Mercado in South
> Carolina.

(Dkt. No. 13-2 at 2.)

Gilchrest states that because Plaintiff was an independent contractor, "Vannadium allowed

him to work where he pleased, and [Plaintiff] chose to live in South Carolina." (Dkt. No. 13-2 at

3.) While Plaintiff lived and worked in South Carolina while working for Vannadium, "he could

have performed the same functions from anywhere." (*Id.*) Gilchrest and Savino describe Plaintiff's

work activities, and their interactions with him, as follows:

> Mr. Mercado engaged with potential investors and customers of Vannadium, which
> were located all across the world. In fact, much of Mr. Mercado's time was spent
> traveling to conferences and to other locations to meet with these prospective

11

customers and investors. . . . Working with Mr. Mercado was typically done via
email, telephone, slack, or other technology-enabled tools. Sometimes, he would
meet with me and other members of the Vannadium team at Vannadium's offices
in Arlington, Virginia, and I once attended a conference with him in Boston,
Massachusetts as well as one in San Francisco, California. However, neither I, nor
anyone else from Vannadium, has ever met with Mr. Mercado in South Carolina.

(Dkt. No. 13-2 at 3; 13-3 at 2.) Plaintiff's "work relationship with Vannadium came to a close on

March 19, 2025, when [Gilchrest] sent him an email terminating the relationship." (Dkt. No. 13-2

at 3.)

Defendants have submitted with their Motion three contracts presented to Plaintiff during

his work relationship with Vannadium, two of which Plaintiff signed.[10] (Dkt. Nos. 13-2; 13-3.)

These contracts each had a choice of law provision, selecting Delaware, and one had an arbitration

clause identifying Delaware as the appropriate venue for arbitration. (Dkt. Nos. 13-2; 13-3.)

In his initial response in opposition to the Motion to Dismiss, Plaintiff does not

acknowledge Defendants' arguments as to the lack of personal jurisdiction. (Dkt. No. 22.) In his

supplemental briefings, Plaintiff provides more details about the alleged work he performed for

Vannadium. In his "Supplemental Declaration," Plaintiff states that he became the "Chief Business

Development Officer" in November 2024, wherein he "led weekly sales and investor meetings,

administered and developed HubSpot workflows for investor and sales pipelines, coordinated pilot

negotiations and go-to-market activities, and conducted investor outreach and fundraising

activities for the company."[11] (Dkt. No. 26 at 1.) Plaintiff states, "I performed the majority of my

work from Charleston, South Carolina and traveled to the corporate office and investor events as

---

[10] These contracts are among the documents at issue in Defendants' Motion to Seal (Dkt. No. 15), which is addressed
*infra* section C.
[11] While this declaration is not notarized, it has been signed and includes a statement swearing its truth under penalty
of perjury. *See* 28 U.S.C. § 1746 (allowing unsworn declarations to have full force and effect if the writer subscribes
the statement as true under penalty of perjury).

required." (*Id.*) He later states that he "periodically traveled to Washington D.C., San Francisco, and other locations for company meetings and investor events." (*Id.* at 2.) Plaintiff "estimate[s]" that he "performed over 90 percent of [his] work from South Carolina and solicited investors while residing in South Carolina." (*Id.*)

In his Supplemental Declaration, Plaintiff describes meeting "our lead investor at an AFCEA event" and later staying with this investor and other Vannadium executives "at an Airbnb in San Francisco while attending JPM Healthcare investor events" in "Q1 2025." (*Id.* at 1.) Plaintiff also states that "[f]rom November 2024 through March 2025 [he] led the go-to-market and pilot preparation for a strategic customer, VaporVM." (*Id.* at 2.) Plaintiff maintains that his Supplemental Declaration and the sealed exhibits submitted by Defendants "provide a prima facie factual basis for specific jurisdiction sufficient to survive dismissal and to justify narrow jurisdictional discovery." (Dkt. No. 25 at 1.)

### 3.    Analysis

As an initial matter, the individual Defendants are not domiciled in South Carolina and Vannadium is not incorporated in South Carolina and does not have a principal place of business in South Carolina. (*See* Dkt. Nos. 13-2; 13-3.) Accordingly, general personal jurisdiction is nonexistent, and the undersigned focuses the analysis on whether specific personal jurisdiction exists.

Upon review, Plaintiff fails to make his requisite prima facie showing. Notably, the mere contracting with a resident of the forum state does not itself subject a defendant to personal jurisdiction. *See Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 191 (4th Cir. 2016) (rejecting a "bright-line rule" that "all contracts creating continuing obligations with a party in the forum state require a finding of purposeful availment"). Instead, because the minimum contacts requirement

"is not susceptible of mechanical application," *Consulting Eng'rs*, 561 F.3d at 278 (citing *Int'l Shoe*, 326 U.S. at 319), a court's analysis is "flexible" and "proceeds on a case-by-case basis," considering the "qualitative nature of each of the defendant's connections to the forum state[,]" *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301–02 (4th Cir. 2012).

As recounted above, Vannadium and the individual Defendants do not maintain offices, agents, or property within the state. After a Vannadium executive first met Plaintiff in Nevada and then Maryland, Vanndium entered into a working relationship with Plaintiff. While it appears that Plaintiff accepted the offer of a role at Vannadium from his home in South Carolina, the contracts signed by Plaintiff do not specify where Plaintiff's work was to be performed. There is no evidence that Plaintiff was hired by Vannadium *because* he resided in South Carolina. *See Waseem v. Stability AI, Inc.*, No. 2:24CV36, 2024 WL 4580401, at *6 (E.D. Va. Oct. 10, 2024) (finding purposeful availment not satisfied in part because the plaintiff "neither alleges that the Stability Defendants recruited and hired him because he was a resident of Virginia, nor does he even allege they considered his residency in doing so. Instead, the parties contracted for [plaintiff] to perform work for the Stability Defendants, and it so happened that he lived in Virginia"), *adopted by*, 2024 WL 5168098 (E.D. Va. Dec. 19, 2024); *see also Berry v. Secure Relationship, LLC*, No. 2:22-cv-02815-DCN, 2022 WL 16720115, at *4 (D.S.C. Nov. 4, 2022) ("The solicitation factor is significantly outweighed when the plaintiff does not allege that "[the employer] recruited h[im] for h[is] job because [ ]he resided in [the forum state]." (quoting *Perry v. Nat'l Ass'n of Home Builders of U.S.*, 2020 WL 5759766, at *5 (D. Md. Sept. 28, 2020) (concluding that there was no purposeful availment because, among other things, the plaintiff "ha[d] not alleged that [defendant] recruited her for her job because she resided in Maryland"))).

Relevant here, Defendants state that Vannadium's "potential investors and customers . . . were located all across the world," and by Plaintiff's own account, he "periodically traveled" outside of South Carolina "for company meetings and investor events." (Dkt. Nos. 13-2 at 3; 13-3 at 2; 26 at 2.) Indeed, Plaintiff states he "first met" and then "worked closely" with "our lead investor" at events outside of South Carolina. (Dkt. No. 26 at 1–2.) While Plaintiff "estimate[s] [he] performed over 90 percent of [his] work from South Carolina and solicited investors while residing in South Carolina," he does not claim that his work activity was *directed at* investors and/or businesses *in* South Carolina at the direction of Defendants. (*Id*. at 2.) Rather, the record indicates that Plaintiff simply worked remotely in South Carolina, engaging with potential investors and customers of Vannadium worldwide, and that the business and investments Plaintiff actually developed arose in states other than South Carolina. *See Higgins v. Catalyst Exhibits*, No. 9:20-cv-3424-BHH, 2021 WL 3886597, at *4 (D.S.C. Aug. 31, 2021) (finding plaintiff failed to make prima facie showing that defendants purposely availed themselves of the privilege of conducting activities in South Carolina where "the unrefuted information before the Court indicates that Plaintiff simply worked remotely from South Carolina, selling trade show labor services nationwide, and that the business Plaintiff actually developed arose in states other than South Carolina").

In short, the record indicates Plaintiff's residency in South Carolina was merely incidental to his working relationship with Defendants, who hired Plaintiff "to assist with business outreach" to Vannadium's "potential investors and customers, . . . which were located all across the world." (Dkt. Nos. 13-2 at 3; 13-3 at 2.) To find personal jurisdiction exists on such a tenuous basis would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co*., 326 U.S. at 316; *see Consulting Eng'rs*, 561 F.3d at 277–78 (4th Cir. 2009) ("Because a sovereign's jurisdiction

remains territorial, to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that 'they amount to a surrogate for presence and thus render the exercise of sovereignty just.'" (quoting *ESAB Group, Inc. v. Centricut, Inc*., 126 F.3d 617, 623 (4th Cir.1997))); *see also Fields v. Sickle Cell Disease Ass'n of Am., Inc*., 376 F. Supp. 3d 647, 653 (E.D.N.C. 2018) ("Plaintiff's choice to complete her work in North Carolina for her own reasons is a unilateral decision that cannot be fairly attributed to the defendant as an attempt to avail itself of the privileges of conducting business [there].")*, aff'd*, 770 F. App'x 77 (4th Cir. 2019). Accordingly, the undersigned cannot find that Defendants purposefully directed their activities at South Carolina such that exercise of jurisdiction would comport with due process.

For the foregoing reasons, Defendants' connection to South Carolina is not substantial enough to demonstrate purposeful availment. Because Plaintiff has not satisfied this first prong of the test for specific jurisdiction, further consideration of prongs two and three is unnecessary. *Consulting Eng'rs*, 561 F.3d at 278 ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to consideration of prongs two and three."). Based on the foregoing, the undersigned recommends Defendants' Motion to Dismiss be granted for lack of personal jurisdiction.[12]

Finally, while Plaintiff asks for "narrow jurisdictional discovery" (*see* Dkt. No. 25 at 1), he does not state what discovery he seeks or how such discovery is reasonably likely to lead to facts sufficient to withstand Defendants' Motion to Dismiss. Accordingly, the undersigned

---

[12] Having recommended dismissal on this basis, the undersigned does not consider Defendants' alternative argument for dismissal under Rule 12(b)(6).

recommends this request be denied.[13] *See Higgins*, 2021 WL 3886597, at *4 (denying plaintiff's "request for the opportunity to conduct jurisdictional discovery" because "Plaintiff has failed to articulate how his discovery request is reasonably likely to lead to facts sufficient to withstand Defendants' motion to dismiss").

### C.     Motion to Seal (Dkt. No. 15)

Finally, in their Motion to Seal, Defendants ask that the Court seal certain exhibits filed in support of their Motion to Dismiss and filed with their response in opposition to Plaintiff's Motion to Remand. (Dkt. No. 15.) Specifically, Defendants seek to seal the following six exhibits submitted in support of their Motion to Dismiss: (1) Exhibit 1—Mutual Non-Disclosure Agreement Between Plaintiff and Vannadium, signed December 21, 2023; (2) Exhibit 2— Marketing Outreach Agreement between Plaintiff and Vannadium, signed December 20, 2023; (3) Exhibit 3—Business Development Referral Agreement between Plaintiff and Vannadium; (4) Exhibit 4—Corrected Marketing Outreach Agreement between Plaintiff and Vannadium; (5) Exhibit 5—March 19, 2025, Email from Gilchrist to Plaintiff, terminating the relationship between Plaintiff and Vannadium; and (6) Exhibit 6—March 26, 2025, Letter from Savino to Plaintiff, elaborating on the terminated relationship between Mr. Mercado and Vannadium. Defendants further seek to seal the following exhibit submitted with their opposition to Plaintiff's Motion to Remand: Exhibit A—August 10, 2025 Email from Plaintiff to Walt Rampata, Co-Founder and Executive Vice President of Vannadium, addressing outstanding claims. In their reply brief, Defendants request that if the Court denies the Motion to Seal, "they be allowed to withdraw the

---

[13] Here, the undersigned recognizes that discovery issues typically are not dispositive. However, because the instant discovery request impacts the issues raised in the Motion to Dismiss, the undersigned finds it appropriate to issue a recommendation as to this request, rather than a final ruling.

confidential documents from their filings . . . and to stand on the public representations about the documents made in their motion papers and supporting declarations." (Dkt. No. 20 at 13.)

Notably, Plaintiff filed the same Mutual Non-Disclosure Agreement and March 26, 2025 Letter from Savino to Plaintiff as an exhibit to his Amended Complaint (Dkt. No. 9-2) and as an exhibit to his Supplemental Declaration (Dkt. No. 26-4). Plaintiff also filed the same August 10, 2025 Email from Plaintiff to Mr. Rampata as an exhibit to his Supplemental Declaration. (Dkt. No. 26-5.) Plaintiff opposes Defendants' Motion to Seal. (Dkt. Nos. 18; 21.)

The undersigned first summarizes the applicable standards before considering the documents at issue.[14]

## 1.    Standards

Pursuant to Local Civil Rule 5.03, D.S.C., "[a] party seeking to file documents under seal shall file and serve a 'Motion to Seal' accompanied by a memorandum." Local Civil Rule 5.03(A), D.S.C. The memorandum must:

> (1) identify, with specificity, the documents or portions thereof for which sealing is requested; (2) state the reasons why sealing is necessary; (3) explain (for each document or group of documents) why less drastic alternatives to sealing will not afford adequate protection; and (4) address the factors governing sealing of documents reflected in controlling case law.

*Id*.

The Fourth Circuit has explained that a district court "has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests." *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). However, the court favors public access and "[t]he public's right of access to judicial records and documents may be

---

[14] Because Plaintiff is representing himself, these standards must be applied while liberally construing his filings in this case. *See Erickson*, 551 U.S. at 94.

abrogated only in unusual circumstances." *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988).

"The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'" *Doe v. Pub. Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014) (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). "By contrast, the First Amendment secures a right of access only to particular judicial records and documents, and, when it applies, access may be restricted only if closure is necessitated by a compelling government interest and the denial of access is narrowly tailored to serve that interest." *Id.* at 266 (internal quotation marks and citations omitted). Courts have found that compelling government interests such as a criminal defendant's Sixth Amendment right to a fair trial, risks to national security, privacy interests of non-parties, and trade secrets can outweigh the presumption of access under certain circumstances. *See Doe*, 749 F.3d at 269.

The applicable right of access varies depending on the nature of a case and the items to be sealed. *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004). When documents are filed in connection with a dispositive motion, the "more rigorous First Amendment standard . . . appl[ies]." *Id.* at 576 (explaining that once documents produced in discovery are "made part of a dispositive motion, they [have] lost their status as being 'raw fruits of discovery.'" (quoting *Rushford*, 846 F.2d at 252)). The Fourth Circuit does not permit the "wholesale sealing of documents based upon unsubstantiated or speculative claims of harm." *Doe*, 749 F.3d at 270. As such, a party requesting to seal documents "must present concrete proof that the public right of access is outweighed by a compelling governmental interest and sealing is narrowly tailored to serve that interest." *Companion Prop. & Cas. Ins. Co. v. Wood*, No. 3:14-CV-03719-CMC, 2017

19

WL 279767, at *2 (D.S.C. Jan. 23, 2017); *see also Va. Dep't of State Police*, 386 F.3d at 575 ("The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position.").

Additionally, courts "must (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." *Ashcraft v. Conoco, Inc*., 218 F.3d 288, 302 (4th Cir. 2000)

### 2.     Analysis

In their Motion, Defendants assert that the exhibits at issue have been submitted under seal "because they address highly sensitive information regarding Defendants' business and business practices, including targets for investors and customers as well as payment terms with vendors and other service providers." (Dkt. No. 15 at 1.) At the outset, the undersigned finds that because the exhibits at issue are attached to dispositive motions, the First Amendment right of access applies.[15] See, e.g., *See, e.g.*, *Levy v. Allegis Grp., Inc*., No. MJM-24-cv-2239, 2025 WL 2711552, at *6 (D. Md. Sept. 23, 2025) ("Defendant's motion implicates the First Amendment right of access to documents filed in connection with a dispositive motion—specifically, Defendants' motions to dismiss."); *Hencely v. Fluor Corp., Inc*., No. 6:19-cv-00489-BHH, 2019 WL 2171145, at *4 (D.S.C. May 20, 2019) (considering motion to seal "exhibits to [a] motion to dismiss" and finding "the First Amendment right of access applies and the exhibits may be sealed 'only on the basis of a compelling governmental interest, and only if the denial [of access] is narrowly tailored to serve

---

[15] As discussed *infra*, the undersigned's ultimate conclusions would be the same regardless of the standard applied.

that interest.'" (quoting *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988))).

A compelling government interest may exist in protecting trade secrets and other sensitive proprietary information. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). However, a "company's unsubstantiated 'fear that disclosure' constitutes a risk is insufficient to overcome the public's First Amendment right of access." *Nielson v. Portfolio Recovery Assocs., LLC*, No. 2:18-cv-1610-RMG, 2019 WL 2513722, at *3 (D.S.C. June 18, 2019) (quoting *Doe*, 749 F.3d at 270); *see also Hill Holiday Connors Cosmopulos, Inc. v. Greenfield*, No. 6:08-cv-03980-GRA, 2010 WL 890067, at *3 (D.S.C. Mar. 8, 2010) ("That a document is confidential to a particular business is not a justification for the extraordinary act of sealing documents protected by the First Amendment's right to access."). Thus, "[i]n order to justify the sealing of such documents, the Defendant must identify the specific trade secret or proprietary information at issue." *Sisk v. Abbott Laboratories*, No. 1:11-cv-00159-MR-DLH, 2014 WL 1874976, at *1 (W.D.N.C. May 9, 2014).

The undersigned first considers Exhibits 2 through 4, which are contracts previously provided to Plaintiff and labeled "CONFIDENTIAL" in watermark. According to Defendants,

> [t]hese contracts detail specific confidential (1) marketing and business; (2) pricing, reimbursement, and payment terms for outside vendors; (3) the identities of former affiliates of Vannadium, who are not parties to this case; and (4) identify confidential product information of Vannadium and third parties. Public disclosure of this information could substantially harm Vannadium's business, as competitor businesses may see it and seek to copy Vannadium's business practices, including by developing similar lead-generation models, or they may unfairly target Vannadium's customers or affiliates.

(Dkt. No. 20 at 6–7.) Based on above, the undersigned finds that Defendants have "identif[ied] the specific . . . proprietary information at issue," as required to justify sealing. *Sisk*, 2014 WL 1874976, at *1. Further, Defendant has described more than an "unsubstantiated 'fear that

21

disclosure' constitutes a risk." *Nielson*, 2019 WL 2513722, at *3. Accordingly, the undersigned grants Defendants' request to seal Exhibit 2 through 4.

As for the remaining documents submitted in support of the Motion to Dismiss, the undersigned finds that Defendants cannot meet the high threshold for sealing. Specific to Exhibit 1, a mutual non-disclosure agreement between Plaintiff and Vannadium, Defendants summarily assert this agreement contains "sensitive, confidential information that should be sealed from the public." (Dkt. No. 20 at 6.) Notably, "confidentiality agreements do not on their own justify closure." *Famulus Health, LLC v. GoodRX, Inc*., No. 2:24-cv-00886-BHH, 2024 WL 4151090, at *20 (D.S.C. Sept. 11, 2024). There does not appear to be anything inherently proprietary within this exhibit, and Defendants' vague and conclusory assertion is otherwise insufficient to justify sealing. The undersigned therefore denies Defendants' request to seal Exhibit 1.[16] *See Nielson*, 2019 WL 2513722, at *3 ("[A] company's unsubstantiated 'fear that disclosure' constitutes a risk is insufficient to overcome the public's First Amendment right of access." (quoting *Doe*, 749 F.3d at 270)).

Turning to Exhibits A, 5, and 6, Defendants describe these as "private communications between Plaintiff and Vannadium regarding Vannadium's termination of its relationship with Plaintiff as well as its subsequent attempts to resolve the pending dispute." (Dkt. No. 20 at 8.) While Defendants assert that these "documents all expressly address settlement proposals from one party to the other," the communications in Exhibits 5 and 6 merely communicate the termination of Plaintiff's working relationship with Vannadium in March of 2025 and detail the

---

[16] Defendants' conclusory assertion likewise fails to justify sealing under the common law standard. *See Famulus Health, LLC v. GoodRX, Inc*., No. 2:24-cv-00886-BHH, 2024 WL 4151090, at *20 (D.S.C. Sept. 11, 2024) ("Famulus's generalized description of alleged confidential commercial information fails to provide a sufficient basis for the Court to overcome the common law presumption of access to documents. Upon its own review, the Court does not find, as argued by Famulus, that paragraphs 1 and 2 of the Injunction Order contain Famulus's 'confidential business practices.'").

compensation still owed to Plaintiff and the items for Plaintiff to return to Vannadium. Because the undersigned does not find these communications can be construed reasonably as "settlement proposals" and Defendants offer no other countervailing concern that could outweigh the First Amendment right of access, the undersigned denies Defendants' request to seal Exhibits 5 and 6. As for Exhibit A, this communication indeed contains a settlement proposal that Plaintiff emailed to Mr. Rampata on August 10, 2025, approximately 11 days before filing this action in state court.

Other than the "equity equivalent" discussed *supra*, however, Plaintiff's settlement proposal mirrors the damages sought in his public pleadings (*see* Dkt. Nos. 1-1; 9) and does not otherwise appear to reveal any sensitive information. Further, given that Defendants quote Plaintiff's request for an "equity equivalent' in their public briefing on the Motion to Remand,[17] it does not appear they find this aspect of the settlement proposal to be confidential. Given that this exhibit largely contains information already revealed on the public docket, and that it does not otherwise implicate any confidential and/or proprietary, and trade secret, information, the undersigned denies Defendants' request to seal Exhibit A.

In sum, the undersigned grants Defendants' request to seal Exhibits 2 through 4, and denies Defendants' request to seal Exhibits 1, 5, 6 and A.[18] While the undersigned will allow Defendants to withdraw Exhibits 1, 5, 6, and A from their filings, the documents underlying Exhibits 1, 6, and A have been separately filed by Plaintiff, and they may remain on the docket.

---

[17] More specifically, Defendants quote portions of this exhibit as follows in their briefing: "In communications with Defendants, Plaintiff has explained that the 'warrants or equity previously promised,' as requested in his Amended Complaint, are '[e]quity equivalent to a $25,000 investment at the pre-seed round's $15M valuation.'" (Dkt. No. 14 at 2–3.)

[18] Even under the common law standard, Defendants have not met their burden of showing that the public's right of access is "*heavily* outweigh[ed]" by competing interests or that "unusual circumstances" require abrogating the public's right to access." *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004) (emphasis added).*Virginia Dep't of State Police*, 386 F.3d at 575 (emphasis added). The undersigned has carefully considered the discretionary factors articulated by Defendants and is not convinced that they favor sealing. (*See* Dkt. No. 20 at 9–11.)

## CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that Plaintiff's Motion to Remand (Dkt. No. 7) be DENIED and Defendants' Motion to Dismiss (Dkt. No. 13) be GRANTED.[19]

IT IS SO RECOMMENDED.

The undersigned further ORDERS that Defendants' Motions to Strike (Dkt. Nos. 23; 28) be DENIED and Defendants' Motion to Seal (Dkt. No. 15) be GRANTED IN PART AND DENIED IN PART. Specifically, the undersigned grants Defendants' request to seal Exhibits 2 through 4, and denies Defendants' request to seal Exhibits 1, 5, 6 and A.

IT IS SO ORDERED.

December 8, 2025

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

---

[19] The dismissal of a case for lack of personal jurisdiction is without prejudice because "such a dismissal does not dismiss the case on the merits." *Pandit v. Pandit*, 808 F. App'x 179, 183 n.3 (4th Cir. 2020).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).